Joseph R. MOORE, Plaintiff,

v.

The UNIVERSITY OF NOTRE DAME, Robert Davie, and Fan Action, Inc., owner and publisher of The Blue and Gold Illustrated, Defendants.

No. 3:97 CV 0143 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

June 12, 1997.

As Corrected July 1, 1997.

R. William Jonas, Jr., Hammerschmidt Amaral and Jonas, South Bend, IN, Richard E. Lieberman, Timothy C. Klenk, Mary Margaret Moore, Ross and Hardies, Chicago, IL, for Joseph R. Moore.

Gerald F. Lutkus, John D. LaDue, Barnes and Thornburg, South Bend, IN, William P. Hoye, University of Notre Dame, Notre Dame, IN, for University of Notre Dame.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This cause is before the court on Defendants' Motion to Dismiss Plaintiff's Defamation Claims Alleged in Count III of Plaintiff's Complaint. During a pre-trial conference, held before this court on May 16, 1997, the parties presented oral arguments regarding this motion. Appropriate briefs and replies have been filed. The court, having considered the pleadings, now rules as follows.

### JURISDICTION

The federal charges alleged in the complaint are brought under the Age Discrimination in Employment Act of 1967, as amended. 29 U.S.C. § 621, *et seq.*, (ADEA). The defamation claims are brought under the common law of the State of Indiana. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, Federal question jurisdiction; § 1343(a)(4), Civil Rights claims; § 1367, supplemental jurisdiction; and 29 U.S.C. § 626(c), civil action for ADEA.

### PROCEDURAL HISTORY

Plaintiff timely filed charges with the Equal Employment Opportunity Commission (EEOC) claiming a violation of ADEA. He received his right to sue letter on February 24, 1997. Defendants Notre Dame and Davie answered Plaintiff's complaint by filing a response to the complaint, a Motion to Strike Count II and a Motion to Dismiss Count III pursuant to Rule 12(b)(6). They also filed several affirmative defenses claiming that the plaintiff failed to exhaust administrative remedies and failed to take reasonable actions to mitigate damages. Additionally, they asserted that the disputed statements were protected by First Amendment privilege, protected by qualified privilege under Indiana defamation law and were not defamatory *per se* or *per quod*.

Defendant Fan Action answered that the statements are not defamatory. In the alternative, Fan Action claims that the statements are privileged under Indiana law as well as under the First and Fourteenth Amendments.

Defendants' Motion to Strike was **denied** on May 16, 1997. The Motion to Dismiss pursuant to Rule 12(b)(6) is now before the court.

### FACTUAL BACKGROUND

The defendant, University of Notre Dame (Notre Dame) is a corporation organized under the laws of the State of Indiana, and has its principal place of business in Notre Dame, Indiana. Defendant, Robert Davie (Davie), is a resident of Granger, Indiana. Davie is currently employed by Notre Dame as the head football coach. Defendant, Fan Action, Inc., is a corporation, organized under the laws of the State of Indiana. It has its principal place of business in Mishawaka, Indiana. Fan Action is the owner and publisher of a publication entitled "Blue and Gold Illustrated" which has a nationwide circulation.

Plaintiff, Joseph R. Moore, is now 65 years old. He was the offensive line football coach for Notre Dame from 1988 to 1996. Under Moore's tutelage, the Notre Dame offensive line was ranked among the top ten in the country. In spite of his satisfactory job performance, Notre Dame terminated Moore's employment in December, 1996. Moore alleges that Davie told him he was fired because he was "too old" and would not be able to continue to coach for another full five-year period. The official reason Notre Dame later gave Moore's attorneys was that Moore

was fired because he did not measure up to the standards of Notre Dame. Notre Dame claimed that Moore had intimidated, abused and made offensive remarks to players.

In Count I of his complaint, Moore challenges that the reasons given for his firing are pretextual and that, in fact, he was discriminated against due to his age. Count II alleges retaliation by Notre Dame. Count III alleges defamation against Davie and Notre Dame. Moore claims Davie published several defamatory statements that have injured his reputation. The gist of these statements is that Moore could only coach another year or two due to his age and that Moore and Davie had agreed it was best for Moore to leave coaching. Davie apparently made these comments on more than one occasion and was quoted in the "Blue and Gold" as stating that Moore "could only coach one or two more years." Count IV of the complaint alleges defamation against Fan Action for their publication of Davie's comments and for an article that stated "[A]t age 64, Moore no longer was physically capable of putting in the hours of his coaching cohorts, and he had long ago abandoned an 'all for one, one for all' approach."

Moore claims that as a result of these allegedly defamatory statements, his career is ruined. He is unemployable in the college coaching arena and his earning capacity has been irreparably injured. He also claims he has suffered mental anguish, loss of reputation, personal humiliation.

### DISCUSSION

The only issue presently before this court is the defamation allegation set forth in Count III of Moore's complaint. Defendants Davie and Notre Dame have filed a Rule 12(b)(6) Motion for failure to state a claim upon which relief can be granted.

### I. Motions to Dismiss

It is well settled that a complaint may not be dismissed for failure to state a claim upon which relief may be granted, unless it appears to a certainty on the face of the compliant that the complaining party is not entitled to any relief. See Fed.R.Civ.P. 12(b)(6); Ind. Rules of Procedure, Trial Rule 12(b)(6); Bienz v. Bloom, 674 N.E.2d 998 (Ind.Ct.App. 1996), reh'g denied; Hanover Logansport, Inc. v. Robert C. Anderson, Inc., 512 N.E.2d 465 (Ind.Ct.App.1987). Courts view motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits. Action Repair, Inc. v. American Broadcasting Cos., Inc., 776 F.2d 143 (7th Cir.1985); Bienz, 674 N.E.2d at 1001; Hill v. Beghin, 644 N.E.2d 893 (Ind.Ct.App.1994), trans. denied. Therefore, for purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), all well-pleaded allegations are presumed to be true. Whirlpool Financial Corp. v. GN Holdings, Inc., 67 F.3d 605 (7th Cir.1995); McTigue v. City of Chicago, 60 F.3d 381 (7th Cir.1995); Richmond v. Nationwide Cassel L.P., 52 F.3d 640 (7th Cir.1995). Furthermore, a court must view those allegations in the light most favorable to the plaintiff, Richmond, 52 F.3d at 644; Gould v. Artisoft, Inc., 1 F.3d 544 (7th Cir.1993), and accept as true all reasonable inferences to be drawn from those allegations. Whirlpool Financial Corp., 67 F.3d at 608; McTigue, 60 F.3d at 382. Dismissal of a complaint for failure to state a claim is granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Richmond, 52 F.3d at 644 (quoting, Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); Chaney v. Suburban Bus Div. of the Reg'l. Transp. Auth., 52 F.3d 623, (7th Cir.1995); Lockhart v. United States, 961 F.Supp. 1260, 1263–64 (N.D.Ind.1997). Additionally, the court may only look to the complaint, and well-pleaded material must be taken as admitted. Id. (emphasis added). A Rule 12(b)(6) motion to dismiss is properly utilized to test the legal sufficiency of the complaint or, stated differently, to test the law of the claim, not the facts that support it. Borgman v. Aikens, 681 N.E.2d 213, 216 (Ind.Ct. App.1997); Gray v. Westinghouse Elec. Corp., 624 N.E.2d 49 (Ind.Ct.App.1993), trans. denied.

In the present case, defendants Notre Dame and Davie move this court to dismiss plaintiff's defamation claims, alleging that the statements are not defamatory as a matter of

law, that the statements are opinions and therefore protected by the First Amendment, and that the statements are incapable of defamatory interpretation. As a result, defendants contend that Moore has failed to state a claim upon which relief may be granted. Viewing plaintiff's allegations in the light most favorable to him, the court reviews the defamation claims.

## II.  Defamation

■ Whether an article or statement could possess a defamatory meaning or implication is initially a question of law for the trial court. *Cochran v. Indianapolis Newspapers, Inc.* 175 Ind.App. 548, 372 N.E.2d 1211, (1978). If a statement is clearly defamatory on its face, it is *per se* defamation. *See generally, Rambo v. Cohen,* 587 N.E.2d 140 (Ind.Ct.App.1992), *trans. denied; Gibson v. Kincaid,* 140 Ind.App. 186, 221 N.E.2d 834 (1966). In such a situation, the words, themselves, without reference to extrinsic circumstances, injure the reputation of the person to whom they are applied. *Tacket v. Delco Remy Div. of General Motors Corp.,* 937 F.2d 1201 (7th Cir.1991), *reh'g denied.* In comparison, if the reader must know extrinsic facts for the libelous understanding to be conveyed, the statement is defamation *per quod.[1] See e.g., Tacket; Schrader v. Eli Lilly & Co.,* 639 N.E.2d 258 (Ind.1994), *reh'g denied.* The decisive question is what the person or persons to whom the communication was published understood as the meaning intended to be expressed. *Schrader, supra.*

### A.  Defamation Per Se

■ A communication is defamatory *per se* if it imputes, among other things, criminal or sexual misconduct. *Rambo, supra.* However, the test for defamation does not turn on its offensiveness to the plaintiff. Statements are only defamatory *per se* when they consti-

tute "a serious charge of incapacity or misconduct in words so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Schrader,* 639 N.E.2d 258 (a statement which falsely charges another with the commission of a crime is defamatory *per se); Henrichs v. Pivarnik,* 588 N.E.2d 537 (Ind.Ct.App.1992) (communication is defamatory *per se* if: it imputes criminal conduct; loathsome disease; misconduct in one's trade, profession or office, or; sexual misconduct).

■ In the present case, plaintiff argues that defendants cannot hide behind the claim that their statements are "merely opinion." Moore alleges several specific statements are defamatory *per se.[2]* (Plaintiff's Surreply at 1–2). Giving each of these statements their "plain and natural meaning", this court concludes that the statements are not defamation *per se.[3]* There is nothing about the statements that imputes misconduct or criminal activity. *See Street v. Shoe Carnival, Inc.,* 660 N.E.2d 1054 (Ind.Ct.App.1996) (store owner's remarks implied woman was shoplifting); *Schrader,* 621 N.E.2d 635 (statements implied theft by employee); *Henrichs,* 588 N.E.2d 537 (imputed corruption to public official). The words do not contain a defamatory meaning on their face, nor do they convey any message berating plaintiff's knowledge and expertise as a coach. It is clear that the speaker was expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts. *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222 (7th Cir.1993), *reh'g denied; see also, Woods v. Evansville Press,* 791 F.2d 480 (7th Cir.1986). Finding no defamation *per se,* the court now determines whether the statements are defamation *per quod.*

---

1.  For a general treatment of the law of libel *per se* vis-avis libel *per quod, see* 50 AM. JUR. (SECOND) LIBEL & SLANDER §§ 136–139 (1995).

2.  Specifically, Moore points to the following statements:

    "Moore is 65 years old and would only be able to coach another year or two, at most." (comment by Davie to the players)

    "Moore even said himself that he 'could only coach one or two more years.'" (comment by

Davie to Fan Action, printed in the Blue and Gold)

    "At 64, Moore no longer was physically capable of putting in the hours of his coaching cohorts, and he had long ago abandoned an 'all for one, one for all' approach." (comment printed in the Blue and Gold).

3.  In fact, the statements regarding Moore's age are undeniably true. The remaining statements are conjecture as to how long Moore is likely to continue coaching.

## B. Defamation Per Quod

■■ To maintain an action for defamation, whether *per se* or *per quod,* a plaintiff must show a communication with defamatory imputation, malice, publication[4], and damages. *Schaefer v. Newton,* 57 F.3d 1073, No. 94–2821, 1995 WL 349977 at *3 (7th Cir.(Ind.), June 8 1995); *Street,* 660 N.E.2d at 1058; *Schrader,* 639 N.E.2d 258. However, while a communication may be defamatory *per quod, Schrader,* 621 N.E.2d at 639; *Rambo,* 587 N.E.2d at 145, this is not the same as being actionable *per quod. See id.* In an action for defamation *per quod,* malice and damages are dispositive. Moreover, libel *per quod* under Indiana law requires that both extrinsic defamatory facts and special damages be pleaded and proved.[5] *Tacket,* 937 F.2d at 1205; *See* W. Prosser and W. Keeton, Prosser and Keeton on Torts, § 112, p. 793 (5th ed. 3rd printing 1989; RESTATEMENT (SECOND) OF TORTS § 575 (1977)).

The parties admit that there was a "statement" and that "publication" occurred. Assuming *arguendo,* the statement possessed the necessary "defamatory innuendo", Moore still must provide the requisite showing of malice and special damages in order to prevail on his claim.[6]

### 1. Damages

■■ Defamation *per quod* is actionable, if at all, only if it causes plaintiff special damages.[7] *Schrader,* 621 N.E.2d at 640; *Rambo,* 587 N.E.2d at 145; *Agnew v. Hiatt,* 466 N.E.2d 781 (Ind.Ct.App.1984); *Brock-man v. Detroit Diesel Allison Div. of General Motors Corp.,* 174 Ind.App. 240, 366 N.E.2d 1201 (1977). Special damages are "damages that are pecuniary in nature and that have been actually incurred as a natural and proximate cause of the wrongful act." *Tacket,* 937 F.2d at 1206; *Stanley v. Kelley,* 422 N.E.2d 663 (Ind.Ct.App.1981).

■ Moore argues that defendants' statements have "tended to injure him in his profession." He claims injury to his good name, fame and credit. He states that the likelihood of obtaining a comparable coaching position is negligible as a result of the defamation. Moore's situation is similar to the plaintiff's in *Tacket.* In that case, the plaintiff argued that his "ability to make a living was diminished by defendant's defamation." 937 F.2d at 1206, n. 2. The court held that this was insufficient, stating, "Tacket's burden was to show damages that are pecuniary in nature and that have been actually incurred as a natural and proximate consequence of the wrongful act." *Id.* While it is possible that those in the business of employing collegiate coaching staff could interpret the comments to mean that Moore is "washed up" as a coach, an allegation as to the "likelihood of obtaining a comparable position" does not constitute proof of specific damages. Furthermore, emotional and physical harms are not special damages. *Rambo,* 587 N.E.2d at 146. They are parasitic damages, viable only when attached to [pecuniary] special damages. *Id.;* C.J.S. Libel and Slander § 191 (1987).

4. Publication amounts to a communication of defamatory matter to a third person. *Kolczynski v. Maxton Motors, Inc.,* 538 N.E.2d 275 (Ind.Ct.App.1989), *trans. denied (citing,* 18 I.L.E. Libel and Slander § 42 (1959)).

5. Defendants refer to the statements as "slander". Slander once involved both "oral slander" and "written slander." *See Clarkson v. McCarty,* 5 Blackf. 575 (1894); *Fenstermacher v. Indianapolis Times Pub. Co.,* 102 Ind.App. 189, 1 N.E.2d 655 (1936). However, we now equate written slander with a form of libel. *Rambo,* 587 N.E.2d at 146. In the present case, defendants' statements were both oral and written. This court will refer to all statements as libel.

6. Defendants also argue that Moore has not pleaded "extrinsic defamatory facts." Due to the fact that Moore's claim fails on the pleading of damages and malice the court chooses not to address this issue. However, defendants' argument is persuasive and properly stated.

7. In a defamation action, there are generally two classes of compensatory damages. The first is "general damages", injury to the plaintiff's reputation and standing in the community, personal humiliation, and mental anguish which damages the law presumes to be the natural, proximate and necessary result of publication of libelous statements. *Powers v. Gastineau,* 568 N.E.2d 1020 (Ind.Ct.App.1991), *trans. denied.* The second class is "special damages", pecuniary in nature, which damages are not assumed to be necessary or inevitable but must be shown by evidence to have been actually incurred as a result of the wrongful act. *Id.* at 1025.

The court thus finds that Moore has failed to plead "specific damages." However, once again assuming arguendo, even if Moore established that his damages were properly pleaded, he cannot succeed on his claim because he has not shown the existence of malice.

## 2. Malice

▮▮▮ Moore must clear the hurdle of showing the defendants acted with the requisite "malice." "Actual malice" may not be presumed. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Under common law, if Moore is a public figure, he must establish by clear and convincing proof that the defamatory statements were made with knowing or reckless disregard for their truth. *Id.* Whether one is a public figure is a question of law to be determined by the courts. *Marcone v. Penthouse Intern. Magazine for Men*, 754 F.2d 1072 (3d Cir.), *cert. denied*, 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985).[8] However, Indiana law applies the same standard to private individuals if the matter is one of "public or general concern." In Indiana, a private individual may recover for injury caused only if he can prove the publication was made with knowledge that it was false or with reckless disregard of whether it was false. *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); *Aafco Heating and Air Conditioning Co. v. Northwest Publications, Inc.*, 162 Ind.App. 671, 321 N.E.2d 580 (1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976).[9] In *Aafco* the court stated:

> We have held that it makes no sense to draw the distinction between "public officials" or figures and "private" individuals in terms of defining the constitutional guarantees of free speech and free press.

162 Ind.App. 671, 321 N.E.2d 580. Therefore, in light of *Aafco*, this court need not determine whether Moore was a public figure.[10] The "actual malice" standard applies so long as the allegedly defamatory statements relate to issues of public concern.[11] *Jean v. Dugan*, 20 F.3d 255 (7th Cir.1994); *Chang v. Michiana Telecasting, Corp.*, 900 F.2d 1085 (7th Cir.1990); *Elliott v. Roach*, 409 N.E.2d 661 (Ind.Ct.App.1980); *Aafco Heating, supra.* In order to prove that a defendant published with "malice" or reckless disregard, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Chester v. Indianapolis Newspapers, Inc.*, 553 N.E.2d 137 (Ind.Ct.App.1990) *reh'g denied, trans. denied.* It is

---

**8.** A test was developed for determining the identity of a "public official" within the *New York Times* decision. However, since that decision, several state court cases interpreting the federal standard have found a wide variety of persons to be "public figures". *See, e.g. Cochran*, 175 Ind. App. 548, 372 N.E.2d 1211 (playboy "playmate"); *Falls v. The Sporting News Pub. Co.*, 834 F.2d 611 (6th Cir.1987). *aff'd*, 899 F.2d 1221 (6th Cir.1990); *Tilton v. Cowles Pub. Co.*, 76 Wash.2d 707, 459 P.2d 8 (1969), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2238, 26 L.Ed.2d 792 (1970) (policeman and fireman running for election to a municipal health and safety board); *Grayson v. Curtis Pub. Co.*, 72 Wash.2d 999, 436 P.2d 756 (1967)(head basketball coach at University of Washington); *Rose v. Koch*, 278 Minn. 235, 154 N.W.2d 409 (1967) (university professor who was a noted author).

**9.** The "actual malice" standard as to private individuals was adopted in the *Aafco* case. The denial of transfer by the Indiana Supreme Court and denial of certiorari by the United States Supreme Court provide sufficient incentive for this court to recognize this standard as applicable to this case. Furthermore, the Seventh Circuit has expressly acknowledged *Aafco* as the established law of Indiana. *See Woods v. Evansville Press Co.*, 791 F.2d 480 (1986).

**10.** *Aafco* puts Indiana among the minority of states that require a private figure to prove actual malice. The other states are Alaska, Colorado and New Jersey. Rodney Smolla, THE LAW OF DEFAMATION § 3.11 (1989 ed.).

**11.** The public interest is necessarily broad. Recent decisions have found a panoply of topics within the scope of "public interest". *See Fazekas*, 583 F.Supp. at 113 (stock car club racing); *Journal–Gazette Co., Inc. v. Bandido's, Inc.*, 672 N.E.2d 969 (Ind.Ct.App.1996) (information about restaurant inspection); *Chang*, 900 F.2d at 1087 (alleged offer of money to a scientist to reveal trade secrets to a competitor). Certainly, Notre Dame football, and college football in general, is a matter of public interest. Given the growing number of television sports channels and the number of publications relating specifically to sports, this court cannot ignore the fact that this is a matter of public concern.

not enough for Moore to allege that a defamatory falsehood has been published or that defendants acted carelessly. *Fadell v. Minneapolis Star & Tribune Co.*, 425 F.Supp. 1075 (1976), *aff'd*, 557 F.2d 107 (7th Cir.1977), *cert. denied*, 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 452.

■ The burden of proving actual malice on the part of a defendant, which is a very difficult and demanding burden, must be shouldered entirely by the plaintiff. *Fadell*, 425 F.Supp. at 1087; *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). This burden is designed to minimize the "chilling effect" that libel suits invariably have on the exercise of First Amendment rights. *Fadell, supra; accord, Time, Inc. v. McLaney*, 406 F.2d 565 (5th Cir.1969).

■ This court has carefully reviewed the plaintiff's pleadings. It is this court's opinion that Moore has failed to establish actual malice on the part of Notre Dame and Davie by clear and convincing evidence. Moore has offered no facts bearing on the dispositive issue. Therefore, Moore's defamation claim cannot succeed. Moore has failed to state a *prima facie* claim for which relief can be granted.

### C.  Qualified Privilege Defense

Defendants assert that their comments are privileged and therefore protected. There is no need to determine if the privilege applies to Notre Dame and Davie as this court has determined that plaintiff's defamation claim against them cannot stand. However, the court briefly addresses the issue as it is particularly applicable to the statements published by Fan Action.

The common law of qualified privilege for media expression was transplanted into the realm of First Amendment doctrine in the case of *New York Times Co. v. Sullivan, supra.* The starting point of this opinion was that a publisher discussing public questions is engaged in an activity protected by the First Amendment. In a subsequent decision, *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Court extended the *New York Times* privilege to media comments on matters of public interest concerning "public figures". Indiana's law reflects this. Indiana's constitutional mandate of freedom of the press was designed to advance "truth, science, morality and the arts in general as well as responsible government." *Curtis Pub. Co.*, 388 U.S. at 147, 87 S.Ct. at 1987 (Harlan, J. *concurring opinion*); *Cochran*, 372 N.E.2d at 1218. If the matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved or because in some sense the individual did not "voluntarily" choose to become involved. *Rosenbloom v. Metromedia*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct. *Id.* at 43, 91 S.Ct. at 1819–1820. Furthermore, the publication of matters which are of general or public concern is an activity protected by Article 1, Section 9 of the Indiana Constitution. *Fazekas v. Crain Consumer Group of Crain Communications, Inc.*, 583 F.Supp. 110 (S.D.Ind. 1984); *Aafco*, 321 N.E.2d at 586.

■ Beginning with the landmark opinion rendered by the United States Supreme Court in *New York Times*, a substantial body of case law has developed that helps define the limitations on state libel laws imposed by the constitutional guarantees of freedom of speech and press. It can now be stated that by virtue of these guarantees, a qualified privilege exists for all media expression. *Fazekas, supra.* In order to overcome that privilege, a libel plaintiff must prove actual malice by clear and convincing evidence. *Id.* Whether a matter is of general or public interest for purposes of applying the "malice" privilege standard is a determination to be made by the trial courts. *Id.*, 321 N.E.2d at 590. As discussed *supra*, it is this court's opinion that football, and specifically Notre Dame football is a matter of public interest. Therefore, the qualified privilege applies. Because plaintiff has failed to produce evidence of malice Moore cannot defeat the privilege claim.

### E.  Summary

Based on an independent review of the pleadings, drawing all reasonable inferences

in favor of Moore, this court concludes that with respect to the defamation claims, Moore has failed to state a claim upon which relief can be granted

### CONCLUSION

Certainly, this court must give respectful attention to the allegations of this plaintiff's complaint drawn and filed by able and experienced counsel. It has done so. Under the law of Indiana as it existed before the advent of *New York Times v. Sullivan*, this complaint fails to allege enough to make a jury question on libel or slander. After the advent of *New York Times* in 1964, the question is absolute that there is simply not enough here alleged to survive a motion to dismiss on any claim for defamation. Of course, it is understood and elementary that the federal question jurisdiction which is invoked in this case cannot be the jurisdictional foundation for a claim for libel and slander. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), *reh'g denied,* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811. The libel and slander claims. therefore, must be on pendent or supplemental jurisdiction based on state law, in this case, the state law of Indiana. State law clearly forecloses such claims and *New York Times* seals that fate.

What remains in this case is a rather standardized set of claims for age discrimination with celebrity parties involved. In the last analysis, the celebrity parties do not change the law or its application. It would behoove the able counsel in this case to concentrate their attention on prosecuting and defending these claims of age discrimination, so that the case can go forward for trial by jury in Lafayette, Indiana, as now scheduled in July, 1998, slightly more than a year from now. Certainly, this does not foreclose the defendants from challenging some or all of these age discrimination claims under Rule 56 of the Federal Rules of Civil Procedure, and no prejudgment on that issue is here intended.

It has been indicated that a settlement conference with a United States magistrate judge might be a waste of time and resources. However, it would seem to this court that at least a preliminary session on that subject with an able and experienced United States magistrate judge might be useful.

Defendant's Motion to Dismiss Count III of Plaintiff's Complaint is hereby **GRANTED**. The parties are further **ORDERED** to proceed with settlement proceedings before the Honorable Robin D. Pierce, United States Magistrate.

**IT IS SO ORDERED.**